## UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| LAURA HERNÁNDEZ MARTÍNEZ, Mérida, Yucatán, Mexico | Case No. 4:21-cv-00520-DCN |
| Plaintiff-Petitioner, | **MEMORANDUM DECISION AND ORDER** |
| RALPH EDWARD PALMER, Salmon, Lemhi County, Idaho, United States, | |
| Defendant-Respondent. | |

## I. INTRODUCTION

Pending before the Court is Plaintiff-Petitioner Laura Hernández Martínez's ("Petitioner") Motion for Preliminary Injunction. Dkt. 11. Having reviewed the record, the Court finds the parties have adequately presented the facts and legal arguments in their briefs. Accordingly, in the interest of avoiding further delay, and because the Court finds the decisional process would not be significantly aided by oral argument, the Court decides the pending motion on the record and without oral argument. Dist. Idaho Loc. Civ. R. 7.1(d)(1)(B).

For the reasons stated below, the Motion for Preliminary Injunction is GRANTED.

## II. BACKGROUND

On December 31, 2021, Petitioner filed a Petition for the Return of Minor Children under the Hague Convention on the Civil Aspects of International Child Abduction

("Convention")[1] and the International Child Abduction Remedies Act ("ICARA"), 22 U.S.C. §§ 9001-9011 (2014).[2] Petitioner brings this action to secure the return of her thirteen-year-old son, M.E.P.H., and her eleven-year-old daughter, L.P.P.H. (collectively the "Children") to Mexico.[3] Petitioner alleges the Children have, without her consent or acquiescence, been wrongfully retained in the District of Idaho by their father, Defendant-Respondent Ralph Edward Palmer ("Respondent").

Petitioner is a citizen of Mexico and Respondent is a citizen of the United States. The Children have duel Mexican and U.S. citizenship. Petitioner and Respondent were never legally married in either Mexico or the United States. However, Petitioner and Respondent lived together, and established a family home, in Mérida, Yucatan, Mexico, beginning in 1999, and continuing until the dissolution of their relationship in approximately November of 2014. From the time of their respective births, and with the exception of vacations and the event described below, the Children have lived continuously in the family home in Mérida, Yucatan, Mexico.

Specifically, following the breakdown in the relationship between Petitioner and Respondent, Petitioner took the Children out of school and absconded with them on

---

[1] Both the United States and Mexico are signatories to the Convention. The United States ratified the treaty on July 1, 1988, and Mexico's entry into the Convention was effective with the United States in 1991. *See* https://travel.state.gov/content/travel/en/International-Parental-Child-Abduction/abductions/hague-abduction-country-list.html.

[2] ICARA was previously codified at  42 U.S.C. § 11601 *et seq*.

[3] Pursuant to Federal Rule of Civil Procedure 5.2(a) and District of Idaho Local Civil Rule 5.5(a), the full names and birth dates of the Children are not included in the Petition and have been redacted from supporting materials in the record.

November 21, 2014. Dkt. 1-3, at 13.[4] Petitioner did not have a custody order allowing her to take the Children at the time, and she did not disclose her whereabouts to Respondent for approximately four months. *Id.* Petitioner later alleged she went into hiding for "protection" against Respondent. *Id*. Petitioner apparently returned to Mérida when the Second Court of Family Orality of the First Judicial Department of the State of Yucatán, Mexico ("Family Court") issued an order granting Petitioner protective measures, including provisional custody of the Children and the eviction of Respondent from the family home. Respondent thereafter established a home of his own in Mérida, where he continued to live and work.

On June 22, 2018, the Family Court entered a final decree awarding sole custody to Petitioner and visitation to Respondent ("Custody Order"). Final judgment on the Custody Order—affirming Petitioner's sole custody of the Children—was entered by the Superior Court of Justice of the Yucatán Civil and Family Collegiate Chamber in Mexico ("Superior Court") on December 12, 2018. In so ruling, the Superior Court found the Children had "developed a state of security, adaptation, identification and stability" in their family home with Petitioner. Dkt. 1-3, at 71. However, the Superior Court also terminated the protective measures Petitioner had obtained from the Family Court against Respondent, finding Petitioner "did not justify with any evidence" the need for such measures. *Id.* at 6.

---

[4] Page citations are to the ECF-generated page number.

Respondent appealed the June 22, 2018 ruling of the Family Court and the December 12, 2018 ruling of the Superior Court, but, on November 27, 2019, his appeal was denied by the Mexican Federal Collegiate Court in Civil and Administrative Matters of the Fourteenth Circuit ("Federal Collegiate Court"). In denying Respondent's appeal, the Federal Collegiate Court affirmed, among other things, the findings of the Family Court that: (1) the Children had lived with Petitioner since November of 2014; (2) Petitioner has provided for the Children's basic needs, health, recreation, and extracurricular activities; (3) Petitioner is physically and emotionally capable of caring for the Children; (4) there was no risk to the Children in permitting them to remain in Petitioner's custody; and (5) the Children were happy living with Petitioner. Dkt. 11-4, ¶¶ 59–61.

Prior to April of 2021, and in accordance with the Custody Order, Respondent was permitted to travel with the Children outside of Mexico to visit Respondent's family and for recreational trips. Pursuant to the Custody Order, the Children's passports, visas, and other travel documents were deposited with the Family Court. The Custody Order required Respondent to report to the Family Court the dates of departure and return, and the proposed destination, for any travel outside of Mexico. Respondent also had to deliver the Children's travel documents back to the Family Court at the conclusion of each trip outside of Mexico.

In early 2020, because of the emergence of the COVID-19 pandemic and her concerns for the Children's health and welfare, Petitioner opposed Respondent's requests that the Children be permitted to temporarily visit his mother in Salmon, Idaho. Petitioner's

opposition was initially sustained by the Family Court. The rulings of the Family Court prohibited Respondent from removing the Children from Mexico. Respondent appealed the Family Court rulings, but his appeal was denied on October 19, 2020.

Respondent subsequently assisted the Children with filing their own challenge to the travel ban order with the Mexican Federal Fourth District Court ("Federal Fourth District Court"). On November 23, 2020, the Federal Fourth District Court accepted the Children's appeal and suspended the Family Court's order prohibiting Respondent from taking the Children to the United States to visit his mother. Petitioner appealed the Federal Fourth District Court's Travel Ban Suspension Order to the Federal Collegiate Court.

While Petitioner's appeal was pending, and in accordance with the Travel Ban Suspension Order, the Children made temporary visits with Respondent to Idaho from November 25, 2020, to December 27, 2020, and from January 11, 2021, to March 14, 2021. Although such visits were against Petitioner's wishes, they were authorized under the Custody Order and Respondent returned the Children to Mexico to live with Petitioner after both trips without incident.

The Children again traveled to Salmon, Idaho, on April 1, 2021. Prior to each of the November 25, 2020, January 11, 2021, and April 1, 2021, trips, Respondent filed a notice with the Family Court informing it of the dates of travel, the dates of return, and the destinations of each proposed trip. In his Notice relating to the April 1, 2021 trip, Respondent informed the Family Court that he would be returning the Children to Mexico

on April 11, 2021. On April 1, 2021, the Children and Respondent traveled to Salmon, Idaho.

On March 24, 2021, the Federal Collegiate Court reversed the portion of the Travel Ban Suspension Order from the previous fall that permitted the Children to travel to the United States. Dkt. 11-8. The Federal Collegiate Court published notice of its March 24, 2021 ruling on April 8, 2021—when Respondent and the Children were already in the United States. Respondent learned that the Foreign Travel Ban had been reinstated on April 9, 2021. Respondent alleges he could not return the Children to Mexico because the reinstatement of the Foreign Travel Ban meant the Children were prohibited from traveling internationally. As such, Respondent contends he "notified Petitioner that he could not bring the Children back, as originally anticipated, because of the reinstatement Foreign Travel Ban." Dkt. 21, at 5. The Children have lived with Respondent in Idaho since April 1, 2021.

On April 28, 2021, May 31, 2021, and July 6, 2021, the Family Court ordered Respondent to return the Children to Mexico. Respondent suggests the Family Court "apparently ignored" the reinstatement of the Foreign Travel Ban when it issued its orders requiring Respondent to return the Children to Mexico. *Id*. A final ruling on the reversal of the Travel Ban Suspension Order was issued by the Federal Collegiate Court on September 29, 2021. However, on August 2, 2021, a suspension of the Family Court's orders was

entered in an Amparo proceeding Respondent filed with the Federal Fourth District Court.[5] On September 8, 2021, December 2, 2021, December 15, 2021, and January 10, 2022, the Amparo court granted Definitive Suspensions against the various Family Court Orders requiring the return of the Children to Mexico.

Petitioner alleges that since Respondent removed the Children from Mexico on April 1, 2021, Respondent has engaged in activities that interfere with her rights as the custodial parent. For instance, on April 3, 2021—two days after departing from Mexico on April 1, 2021—Respondent enrolled the Children in school in Salmon, Idaho. During their prior two visits to see Respondent's mother in November of 2020 and January of 2021, the Children continued to virtually attend their school in Mexico.

Petitioner also suggests that, shortly after the Children's wrongful removal on April 1, 2021, Respondent restricted the Children's use of their iPads, allowing them to use their iPads only sporadically on weekends or when strictly necessary. As a result of such restrictions, Petitioner contends her communication with the Children has become extremely limited. Petitioner maintains M.E.P.H. stopped writing to her in October of 2021, and that he is now only allowed to communicate with her via Respondent's

---

[5] In Mexico, a "Juicio de Amparo" is a constitutional procedure through which an individual may obtain injunctive relief from a Mexican federal court invalidating any government action taken in violation of the individual's human rights under Mexican law. *Madrigal v. Tellez*, 2015 WL 5174076, at *9 (W.D. Tex. Sept. 2, 2015). Under Mexican law, decisions of an Amparo court are provisional in nature and only limit governmental action. *Id.* This is because the parties to the Amparo proceeding are the individual asserting the constitutional or human rights violation (in this case either Respondent or the Children's Court Appointed Special Representative) and the allegedly offending governmental entity (in this case the Family Court). Dkt. 22, at 8. Petitioner is not a party to any of the Amparo proceedings, and the custody rights of Petitioner and Respondent will continue to be determined by the Family Court. *Madrigal*, 2015 WL 5174076, at *9.

cellphone. Petitioner alleges L.P.P.H. also infrequently writes to Petitioner, and that she was only allowed to connect with Petitioner via Facetime during the 2021 Christmas and 2022 New Year's holidays. Petitioner maintains the frequency of her communication with the Children has been reduced to an average of one phone call per week, with all phone calls monitored by either Respondent or his mother. Respondent counters that the Children have multiple devices they can use to communicate with Petitioner, and that while he has continuously encouraged such communication, he does not force the Children to communicate with Petitioner if they do not wish to do so.

In addition to enrolling the Children in school in Idaho, Respondent commenced an action in the District Court for the Seventh Judicial District for the State of Idaho, In and For the County of Lemhi, Magistrate Division ("State Court Action"). In the State Court Action, Respondent sought an ex parte appointment granting him custody of the Children and ordering that the Children remain in his custody in Idaho. Respondent also sought an order finding that custody jurisdiction remain in Lemhi County, Idaho, subject to the Idaho State Court conferring with the courts of Mexico. In his ex parte custody motion, Respondent also asked the Idaho State Court to allow him to "have the minor children with him at any location he may be, within or outside the State of Idaho, with [the Idaho State Court] retaining Jurisdiction to adjudicate all matters involving the children

and Petitioner subject to the court's jurisdiction for all purposes." Dkt. 11-14, at 10. The Idaho State Court denied Respondent's ex parte request.[6]

Petitioner filed the instant Petition on December 31, 2021.[7] Upon Respondent's receipt of the Summons for the instant suit, the Children's Court Appointed Special Representative in Mexico immediately prepared and filed an Amparo proceeding, requesting an injunction against the actions of the Mexican Secretary of Exterior Relations, who permitted the initiation of this suit by Petitioner. On February 3, 2022, the Amparo court granted a provisional suspension against the return of the Children to Mexico pending custody proceedings in Mexico.

After serving Respondent, Petitioner filed the instant Motion for Preliminary Injunction ("PI Motion") on January 27, 2022. Pursuant to Petitioner's Unopposed Motion to Expedite Briefing and Consideration of PI Motion, the Court entered an expedited briefing schedule on January 28, 2022. Dkt. 13. Once the PI Motion was fully briefed, the Court held an informal scheduling conference with counsel for the parties. On February 23, 2022, the Court entered a Scheduling Order setting an evidentiary hearing on the merits of the Petition for April 28, 2022. Dkt. 23. In the meantime, the Court turns to Petitioner's request for the injunctive relief outlined in her PI Motion.

---

[6] On June 18, 2021, Petitioner commenced the administrative process under the Convention by filing an application ("Return Application") with the government of Mexico. Pursuant to the Convention, the United States Department of State sent Respondent written notice of Petitioner's Return Application on July 9, 2021—three days before Respondent commenced the State Court Action.

[7] Petitioner filed a corrected Petition on January 3, 2022 (Dkt. 5-1) to correct the sequence/spelling of her name under Latin American surnaming conventions. Dkt. 5. The Petition and Corrected Petition are otherwise identical. As such, the Court refers to the Petition and the Corrected Petition interchangeably.

### III. LEGAL STANDARD

A party seeking a preliminary injunction must establish: (1) a likelihood of success on the merits; (2) likely irreparable harm in the absence of a preliminary injunction; (3) that the balance of equities weighs in favor of an injunction; and (4) that an injunction is in the public interest. *Winter v. Nat. Res. Def. Council, Inc*., 555 U.S. 7, 20 (2008). Injunctive relief is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Id.* at 22 (citing *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997)).

### IV. ANALYSIS

#### A.  Relief Requested

In her PI Motion, Petitioner asks the Court to: (1) enjoin Respondent from removing the Children from this Court's jurisdiction pending a determination on the merits of her Petition; (2) require Respondent to surrender physical custody of all passports and other travel documents for the Children with the Clerk of the Court for the U.S. District Court for the District of Idaho during the pendency of this action; (3) require Respondent to submit Center for Disease Control Vaccination Record Cards (or other documentary evidence satisfactory to the Court) evidencing that the Children have each been fully vaccinated against COVID-19 in accordance with applicable U.S. Center for Disease Control Guidelines; (4) require that Respondent (a) permit Petitioner to communicate by video conference with the Children immediately and as often as Petitioner may desire, but not less often than one-half hour four times per week, (b) provide the Children with

sufficient internet access and permit the Children to have access to electronic tablets, computers, or other comparable computing devices sufficient to permit the Children to freely communicate with Petitioner in the above-requested manner, and (c) provide the Children with a location in which such communications can be unmonitored and free of any interference from, or observation by, either Respondent or any person other than M.E.P.H. or L.P.P.H.; and (5) require Respondent to disclose to the Court and counsel the school(s) the Children are attending and to enjoin any change in schools during the pendency of this action without Petitioner's approval.

Respondent has no objection to surrendering the physical custody of all passports and other travel documents for the Children to the Clerk of the Court during the pendency of this action. Nor does Respondent object to submitting the COVID-19 vaccination records for the Children to the Court, to providing information regarding where the children are attending school, or to facilitating communication between Petitioner and the Children.[8] As such, the Court need consider only Petitioner's first request for injunctive relief regarding jurisdiction.

Respondent contends that he "mostly agrees with the proposed Injunction of not removing M.E.P.H. and L.P.P.H. from the jurisdiction of this Court pending a

---

[8] Respondent has submitted copies of the Children's vaccination cards and has also disclosed that the Children are attending school at Salmon JR./SR. High School. Dkt. 15-2; Dkt. 20-3. Because Respondent did not respond to Petitioner's request that the Court enjoin any change in the Children's school during the pendency of this action, the Court assumes he does not object to this request. Further, while Respondent suggests there are times "when the Children do not wish to speak with Petitioner, usually after conversations with her that have upset them," he maintains he has no objection to the Children having frequent contact with their mother. Dkt. 20-1 at ¶ 15; Dkt. 21, at 3. Respondent does not otherwise address Petitioner's specific requests regarding her communication with the Children while this action proceeds.

determination on the full and complete record and accompanying evidence in this case." Dkt. 21, at 2. However, Respondent suggests some travel outside of Idaho should be allowed during the pendency of this action, including travel to Montana for the Children's extracurricular activities, as well as a planned trip to California for the Children to visit their cousins over Spring Break. Respondent maintains Petitioner will be "fully advised of all travel, locations and contact information, as has always been the case." *Id*. at 3.

### B.  Assessment of PI Motion

For the reasons discussed below, the Court finds Petitioner has established each of the four prongs of the preliminary injunction analysis. However, it is important to note that at this stage of the litigation, the Court is *not* determining that the Children should be returned to Mexico. Rather, the Court concludes Petitioner has sufficiently satisfied the *Winter* standard and that a preliminary injunction is justified to preserve the status quo pending the April 28, 2022 evidentiary hearing and the Court's ruling on the Petition. Accordingly, the Court will temporarily enjoin Respondent from removing the Children from the District of Idaho, and will also require him to deposit the Children's travel documents with the Clerk of the Court, to refrain from changing the Children's school during the pendency of this action without Petitioner's approval, and to facilitate communication between the Children and Petitioner.[9] This injunction shall remain in effect until the Court rules on the Petition.

---

[9] As noted, Petitioner has already identified the Children's school and has also provided evidence of their vaccination status.

*1. Likelihood of Success on the Merits*

An evaluation of Petitioner's likelihood of success on the merits turns on a review of the Convention. The Convention, "which Congress implemented through ICARA, was designed to address the problem of parental international child abduction." *Von Kennel Gaudin v. Remis*, 282 F.3d 1178, 1181 (9th Cir. 2002) (citations omitted). The Signatories to the Convention perceived that parents were wrongfully taking their children across international lines "in search of a more sympathetic court" for custody proceedings. *Id.* (citing *Friedrich v. Friedrich*, 983 F.2d 1396, 1400 (6th Cir. 1993)). "It is the Convention's core premise that the interests of children in matters relating to their custody are best served when custody decisions are made in the child's country of habitual residence." *Monasky v. Taglieri*, 140 S. Ct. 719, 723 (2020) (cleaned up). The Convention generally requires the prompt return of a child wrongfully removed or retained away from the country in which s/he habitually resides. *Id.* This return requirement is a "provisional" remedy that fixes the forum for custody proceedings. *Id.* Thus, the "Convention's focus is not the underlying merits of a custody dispute but instead whether a child should be returned to a country for custody proceedings under that country's domestic law." *Papakosmas v. Papakosmas*, 483 F.3d 617, 621 (9th Cir. 2007).

Under ICARA, Petitioner must show that Respondent wrongfully removed or retained the Children away from the country of their habitual residence. *See* 22 U.S.C. § 9003(e)(1)(A). In determining whether the removal or retention of the Children was "wrongful" under the Convention, the Court must answer four questions: (1) when the

removal or retention at issue took place; (2) which state the child was habitually a resident of immediately prior to the removal or retention; (3) whether the removal or retention breached the rights of custody attributed to the petitioner under the law of habitual residence; and (4) whether the petitioner was exercising such custody rights at the time of the removal or retention. *Papakosmas*, 483 F.3d at 622.

     a.  <u>Date of Wrongful Removal or Retention</u>

Respondent removed the Children from Mexico on April 1, 2021, after providing the requisite notice to the Family Court. Pursuant to the Custody Order, Respondent advised the Family Court he would return the Children to Petitioner on April 11, 2021. However, apparently unbeknownst to the parties, the Federal Collegiate Court reversed the portion of the Travel Ban Suspension Order that permitted the Children to travel to the United States on March 24, 2021. Petitioner consented to the April 1, 2021 travel date[10] and, because neither Petitioner nor Respondent were aware that the Federal Collegiate Court had prohibited international travel when Respondent took the Children to the United States on April 1, 2021, the Court does not find—at least on the current record—that the removal of the Children was "wrongful." *See, e.g., Flores Castro v. Renteria*, 382 F. Supp. 3d 1123, 1128 (D. Nev. 2019) ("Typically, wrongful removal refers to the respondent unilaterally taking the child out of their habitual residence in violation of the petitioner's

---

[10] *See* Dkt. 22, at 5 (noting the "Children's visit to the United States ceased to be consensual once [Respondent] failed to return the Children to their country of habitual residence on April 11, 2021, as previously agreed to by the parties.")

rights and without the petitioner's permission.") (citing *Lozano v. Montoya Alvarez*, 572 U.S. 1, 9 (2014)).

Respondent has retained the Children in the United States since April 1, 2021. Petitioner contends the retention became wrongful on April 11, 2021, when Respondent did not return the Children to Mexico on the promised return date. Respondent counters that he could not return the Children to Mexico as planned because he received notice on April 9, 2021, that the Foreign Travel Ban had been reinstated. Respondent explains:

> Under the advice of counsel that he must adhere to the reinstated Foreign Travel Ban, on Monday, April 12, 2021, Respondent filed notice with the Family Court of said notification of the Foreign Travel Ban being reinstated and therefore he could not return the Children to Mexico as said order stated they were not to travel internationally.

Dkt. 21, at 5.

Respondent's position is disingenuous for several reasons. First, "[w]rongful retention most often refers to the respondent keeping the child out of their habitual residence beyond the time authorized by the petitioner." *Flores Castro*, 382 F. Supp. 3d at 1128 (cleaned up). Regardless of the reinstatement of the Foreign Travel Ban, Petitioner has never authorized, and has instead vehemently opposed, Respondent's retention of the Children in the United States beyond April 11, 2021. Indeed, Petitioner obtained orders from the Family Court on April 28, 2021, May 31, 2021, and July 6, 2021, ordering Respondent to return of the Children to Mexico.

Second, Respondent enrolled the Children in school in Salmon, Idaho—without Petitioner's knowledge or consent—on April 3, 2021. Dkt. 11-1, at 12. While suggesting

he enrolled the Children in school in Idaho once "the Foreign Travel Ban was put into effect at or about April 8, 2021, prohibiting the Children from traveling back to Mexico," Respondent ignores that he enrolled the Children in school in Idaho *before* he purportedly had notice of the reinstatement of the Foreign Travel Ban. Dkt. 21, at 8. As such, Respondent appears to be using the reinstatement as a fortuitous excuse to justify his wrongful retention of the Children.

Third, Respondent has not shown his retention of the Children in the United States was required by the reinstatement of the Foreign Travel Ban. Instead, he admits that this was a tactical decision based on the "advice of counsel," presumably to obtain an advantage in the choice of forum for his continued collateral attacks on the Mexican Family Court's custody determinations. Dkt. 21, at 5, 14. Notably, the Convention is premised on *depriving* parties of any tactical advantage gained by wrongfully retaining a child in a more favorable forum. *Holder v. Holder*, 392 F.3d 1009, 1013 (9th Cir. 2004).

Fourth, nothing in the April 8, 2021 reinstatement of the Foreign Travel Ban appears to prohibit Respondent from returning the Children to Petitioner in Mexico. In fact, in his Answer to the Corrected Petition, Respondent expressly acknowledged the limited scope of the reinstatement of the Foreign Travel Ban, stating:

> The Mexican Collegiate Circuit Court has **not** ruled that the Children should return to Mexico, but only that they should not travel to the United States due to the danger that international travel represents to the Children's health. At the time that ruling was issued, the Collegiate Circuit Court did not have knowledge of the location of the Children (in the United States), and assumably, ruled as if the Children were in Mexico.

Dkt. 15, ¶ 27 (emphasis in original).

**MEMORANDUM DECISION AND ORDER - 16**

Finally, as Petitioner highlights, that the reinstatement of the Foreign Travel Ban did not prohibit Respondent from returning the Children to Mexico on April 11, 2021, is further suggested by the subsequent orders of the Family Court. It is uncontroverted that on April 28, 2021, May 31, 2021, and July 6, 2021, the Family Court (the same court that issued the original Travel Ban Orders that were affirmed by the April 8, 2021 Federal Collegiate Court Ruling) ordered Respondent to return the Children to Mexico and imposed sanctions against Respondent for his failure to do so. Dkt. 22, at 10.

In short, Petitioner has demonstrated she is likely to succeed on her claim that Respondent has wrongfully retained the Children in the United States since April 11, 2021.

b. Place of Habitual Residence

Determining the habitual residence of a child prior to his or her wrongful removal or retention is crucial because the "relevant custody rights are those recognized by the State of habitual residence, and it is the State of habitual residence to which the child should be returned and where the ultimate merits of the custody fight are to be decided." *Asvesta v. Petroutsas*, 580 F.3d 1000, 1017 (9th Cir. 2009) (cleaned up). While the Convention does not define the term "habitual residence," Federal Appellate Courts share a "common understanding" of the term. *Monasky*, 140 S. Ct. at 726. Specifically, the "place where a child is at home, at the time of removal or retention, ranks as the child's habitual residence." *Id*.

At all times since their births—with the exception of the two to six-month period Petitioner absconded with the Children in 2014, and brief periods of visitation with

Respondent—the Children have lived in their family home in Mérida, Mexico. Before their removal on April 1, 2021, the Children always attended school in Mérida, including via virtual attendance throughout the COVID-19 pandemic and during their prior trips with Respondent to the United States. The Children have friends in Mérida and engage in social and extracurricular activities in Mérida. In addition, Petitioner timely commenced the instant Hague return proceeding within the time indicated under the Convention to preclude application of the "well settled" exception to return. Conv. Art. 2.

Further, Respondent admits that the habitual residence of the Children is Mérida, Yucatán, Mexico throughout his Answer to the Corrected Petition. Dkt. 15, ¶ 5 (admitting Petitioner's contention that the Children's place of habitual residence was in Mérida, Yucatán, Mexico, prior to their removal by Respondent); Dkt. 15, ¶¶ 17–18 (admitting paragraphs 21 and 22 of the Corrected Petition, which again identified the Children's habitual residence as Mérida, Yucatán, Mexico).

Despite the aforementioned admissions, Respondent argues in his response to the PI Motion that "the Children have repeatedly visited and been at the location in the United States (Salmon, Idaho), over a long period of time and in fact have been there for many months now, potentially indicating that the habitual residence of the Children, as the case law discusses, may not be in Mexico as alleged by Petitioner." Dkt. 21, at 12. Respondent does not identify any case law to support this claim. Notably, in determining whether a child has acquired a new habitual residence, a court must consider whether there was a settled intention to abandon a prior habitual residence. *Papakosmas*, 483 F.3d at 622. Here,

there is no evidence to suggest there was a mutual settled intention between Petitioner and Respondent to abandon the Children's prior residence in Mexico. and the record instead refutes this conclusion. By all accounts, it appears that there has been no change to the habitual residence of the Children, and that their habitual residence is still in Mexico.

    c.  <u>Breach of Petitioner's Custody Rights</u>

It is undisputed that, on June 22, 2018, the Family Court awarded Petitioner sole custody of the Children, with Respondent granted certain visitation rights as the non-custodial parent. Dkt. 5-1, ¶¶ 14–15; Dkt. 1-2, at 78; Dkt. 20-1, ¶ 9. However, Respondent argues the Children are now "with him pursuant to and based on orders issued out of the Mexican courts." Dkt. 21, at 13. As explained *supra*, pages 15–17, the reinstatement of the Foreign Travel Ban did not alter Petitioner's custody rights. Nor did the orders of the Amparo court change Petitioner's custody rights because decisions of an Amparo court are provisional in nature and only limit governmental action. *Madrigal*, 2015 WL 5174076, at *9. Moreover, the primary purpose of the Convention is to "restore the *pre-abduction* status quo." *England v. England*, 234 F.3d 268, 271 (5th Cir. 2000) (emphasis added). The various orders entered after Respondent failed to return the Children to Mexico on April 11, 2021, appear to be irrelevant to Petitioner's sole custody rights, instated prior to the abduction.

Ultimately, despite the back and forth between the various Mexican courts regarding the Children's right to travel internationally, there are no orders before the Court to suggest

Petitioner's award of sole custody has changed. Respondent's retention of the Children thus appears to have breached Petitioner's custody rights.

    d.  <u>Petitioner's Exercise of her Custody Rights</u>

Finally, it is undisputed that Petitioner was exercising her custody rights at the time of Respondent's retention of the Children on April 11, 2021. Respondent suggests that he was also exercising his custody rights because the Children were allowed to travel with him under the Custody Order and because Petitioner consented to the Children travelling to Idaho on April 1, 2021. Dkt. 21, at 15. This argument ignores that Respondent has retained the Children in Idaho since April 11, 2021, despite having advised the Family Court that he would return the Children on April 11, 2021, despite Petitioner's repeated objections to the Children staying in Idaho, and despite three orders from the Family Court requiring Respondent to return the Children to Mexico.

In sum, Petitioner has established she will likely succeed in establishing each of the four prongs of her wrongful retention claim.

    *2.  Irreparable Injury*

The further concealment or removal of the Children from this Court's jurisdiction is an immediate irreparable injury warranting preliminary injunctive relief. *Culculoglu v. Culculoglu*, 2013 WL 1413231, at *5 (D. Nev. 2013); *Smith v. Smith*, 2017 WL 6040068, at *2 (D. Idaho 2017); *Schaeffer v. Jackson-Schaeffer*, 2017 WL 11458052, at *3 (E.D. Tenn. 2017); *Alcala v. Hernández*, 2014 WL 5506739, at *6 (D.S.C. 2014); *Jenkins v. Jenkins*, 2008 WL 483312 (S.D. Ohio 2008).

Given that Respondent has already allegedly wrongfully retained the Children in the United States for nearly a year, there is a risk that he may leave this jurisdiction with the Children in the absence of injunctive relief. If Respondent were to flee the Court's jurisdiction and conceal the Children prior to the evidentiary hearing, the entire purpose of the Hague Convention and ICARA could be defeated. As another district court has stated, "this, by definition, is irreparable harm." *Application of McCullough on Behalf of McCullough*, 4 F. Supp. 2d 411, 416 (W.D. Pa. 1998).

### 3.  Balance of Harm

Respondent will not suffer any injury if he is ordered to maintain the Children in their current location in Idaho pending the Court's review of Petitioner's claims. In fact, Respondent contends the Children want to stay in Idaho and admits it is his intention to proceed with the Idaho State Court action to obtain permanent custody of the Children once this action concludes.[11] Dkt. 21, at 14. By contrast, as explained above, Petitioner would be irreparably harmed if Respondent is permitted to leave Idaho's jurisdiction and absconds with the Children.

### 4.  The Public Interest

Finally, the Convention evidences the public policy for returning children wrongfully retained from their home country to the care of their lawful guardian in that home country. Congress has explicitly endorsed this policy and has granted jurisdiction to

---

[11] Of course, Respondent will be unable to do so if the Court ultimately determines the Mexico courts have jurisdiction over the parties' custody dispute.

the federal courts to enforce the Convention in actions such as this. 22 U.S.C. § §9001(a)(2), 9003.

In this case, Respondent has litigated and relitigated Petitioner's status as sole custodian of the Children in the courts of Mexico. *See* Dkt.5-1, ¶¶ 12, 14, 15, and 16. Throughout that comprehensive and consuming judicial process, the courts of Mexico have consistently ruled that Petitioner should have sole custody of the Children. *Id.* Having lost in the courts of Mexico, Respondent appears to have taken unilateral action to remove and wrongfully retain the Children in the United States. Thus, the public interest in this case weighs heavily in favor of injunctive relief to ensure the safety and maintenance of the Children pending the Court's decision on the merits.

### V. ORDER

NOW, therefore, IT IS HEREBY ORDERED:

1.  Petitioner's Motion for Preliminary Injunction (Dkt. 11) is **GRANTED**;

    a.  The Children shall not leave Idaho pending a determination on the merits of the Petition following the April 28, 2022 evidentiary hearing;[12]

    b.  Respondent shall deposit all travel documents for the Children, including their passports, with the Clerk of the Court with 7 days of the date of this order;

---

[12] Although the Court appreciates the Children's desire to leave Idaho for extracurricular activities and travel, allowing such travel in light of Respondent's conduct could prevent Petitioner from ever obtaining a forum for the resolution of this dispute.

c.   Respondent shall not change the Children's school during the pendency of this action without Petitioner's express written consent;

d.   Respondent shall facilitate frequent communication via video conference between the Children and Petitioner. Although the Court will leave it to the parties to decide when and how (such as through Zoom, Facetime, or other comparable program) such video conferences shall occur, Respondent shall ensure the Children are available to speak with Petitioner no less than four times per week.[13] Respondent shall also provide the Children with a location in which such communications are unmonitored and free from interference by Respondent, his mother, or other third parties. Finally, Respondent must also provide the Children with internet access and permit them to have access to computing devices sufficient to allow for frequent email communication between Petitioner and the Children.

DATED: March 7, 2022

David C. Nye
Chief U.S. District Court Judge

---

[13] While Martínez requests that each video conference be at least thirty minutes, the Court finds such a temporal requirement would be difficult, if not impossible, for either Palmer or the Court to enforce. Palmer is required to facilitate four video conferences between the Children and Petitioner per week, and to also provide the Children with access to tablets, computers, or comparable computing devices so Petitioner can communicate with the Children via email.